AGNES MICKEE, as Administratrix of the Goods, Chattels and Credits of CHARLES MICKEE, Deceased, Appellant, *v*. THE WALTER A. WOOD MOWING AND REAPING MACHINE COMPANY, Respondent.

*Negligence — master and servant — risk not incident to the employment. — notice to employer.*

Where an employee is engaged in grading for a railroad track, and a post, standing on end on the outside line of a building in process of construction owned by his employer, adjoining the railroad track, falls and kills him, the injury does not result from the ordinary risk incident to the work of grading and is not one which he assumes in entering upon such employment, and the questions whether the place was a safe one and whether the employer should be presumed to have had notice of the increased hazard should be submitted to the jury.

APPEAL by the plaintiff, Agnes Mickee, as administratrix, etc., of Charles Mickee, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of Rensselaer county on the 8th day of March, 1893, upon a nonsuit granted upon a trial at the Rensselaer Circuit before the court and a jury.

The action was brought to recover the damages resulting from the death of the plaintiff's intestate while in the employ of the defendant, because of the alleged negligence of the defendant in neglecting to furnish and provide for such employee a suitable and proper place in which to work and perform the duties assigned to him by the defendant.

It appeared upon the trial that the plaintiff's intestate was engaged at the time of the accident in the work of grading preparatory to the laying of certain railroad tracks, and was injured by the fall of a post from the third story of a building belonging to his employer, which was in process of construction.

*Olin A. Martin*, for the appellant.

*Hinsdill Parsons* and *George E. Greene*, for the respondent.

MAYHAM, P. J.:

The plaintiff's intestate was killed by the falling of a post which had been placed perpendicularly on end on a plate of a building of

the defendant in process of construction.   The plate on which the foot of the post stood was about thirty-five feet from the ground at the point when the accident occurred.

This post had stood there three or four days before it fell.   The foot of this post stood on a level with the third floor of the building, which was partially laid, and the post which fell stood, with several other posts, about twelve or fifteen feet distant from each other on the beam or plate on which the third floor was laid, on a line with the outside of the building flush out with the side of the supporting timber, and the railroad track on which the plaintiff's intestate was at work, ran along that side of the building parallel with, and close to it.   These posts were placed there to support the fourth story of the building, and the evidence does not disclose how they were secured or fastened in that position.

They were of spruce timber, ten inches square and about ten feet long.   The building from which this timber fell was a new wood building in process of construction and was sided up to the timbers on which the foot of this post rested.

There seems to be no dispute but that plaintiff's intestate was killed by the falling of this post, which fell upon him at the place at which he was directed to work, and while engaged in the service of the defendant, and the building and the railroad were the defendant's property, and being constructed by it.

Intestate was not working on the building.   The plaintiff was nonsuited on her own proof, no evidence having been given by the defendant, and the principal question raised on this appeal is as to whether or not the defendant furnished a reasonably safe place for plaintiff's intestate to work, or whether under the evidence in this case, that question should not have been submitted to the jury as one of fact.

It is urged on the part of the respondent, as the condition of the building in process of construction was equally open to the observation of the intestate and the defendant, he was equally negligent with the defendant in not avoiding the danger if the place in which he worked was a dangerous one.

But the difficulty with that contention is that the evidence shows that the deceased did not work on the building and fails to show that he had any knowledge of its condition, or of any fact to put

him on inquiry as to the safety of the place in which he was required to work, while it was the absolute legal duty of the defendant to see to it that it was a reasonably safe place.

In *Lorey* v. *Hall,* 8 N. Y. St. Repr. 799, cited by the respondent, it was held that it is the duty of the master to use proper care and prudence in the selection of the place and appliances used by his servants in the discharge of the duties of his employment. Such duty is imposed by law, and implied against him by the contract with the servant. The servant has a right to shape his conduct and act in reliance upon the protection and security which the proper discharge of the legal duties and obligations of the master will afford.

It is true that the servant who undertakes the performance of hazardous duties assumes the risk, naturally and necessarily incident to such employment. (*Evans* v. *Lake Shore & Michigan Southern R. R. Co.,* 12 Hun, 289.) But that risk must be such only as naturally arises out of the nature of the employment, and does not relieve the master from the obligation to furnish such reasonably safe place and tools as the nature of the employment may reasonably enable the master to furnish.

It is also true that if the servant has accepted the service with knowledge of the character and position of the structure from which he may be liable to injury, he cannot maintain an action against his employer for indemnity for such injury if it happen. *De Forest* v. *Jewell,* 88 N. Y. 264.)

We have examined all the cases cited by the learned counsel for the respondent, and find none that relieves the employer from the well-settled rule that requires him to furnish a reasonably safe place, considering the nature of the employment, for the performance of the work by the employed.

But it is insisted by the counsel for the defendant that the respondent had no reason to apprehend danger of the happening of the event which produced the injury to the deceased, and we are referred to the case of *Haskins* v. *Stewart* (32 N. Y. St. Repr. 962), and several other cases of a kindred character upon that branch of the case. We are inclined to the opinion that whether or not the place was of the character from which the employer might be presumed to assume that it was free from danger not incident to the ordinary employment of the deceased, was one that should have been submitted

to the jury for their determination, and that it was error to dispose of that question, under the circumstances of this case, as one of law.

It needed no evidence to show that a stick set up on end of the dimensions of the one by which the injury was inflicted, unless the same was well guyed and secured, was liable to fall. With that fact in the case we think it was for the jury to say whether the place was such a one as was contemplated by the employment, and whether the defendant could safely rely upon the assertion that it had no reason to apprehend danger to the deceased.

The risk in this case was not the ordinary risk incident to grading on a railroad, and not, therefore, the risk which the decedent naturally assumed when engaging in that employment. The hazard was increased by the proximity to the unfinished building of the defendant which it was constructing, and we are of the opinion that the question of increased hazard was a proper question for the jury. (*Kranz* v. *The Long Island R. R. Co.*, 33 N. Y. St. Repr. 46; *Cullen* v. *Norton*, 36 id. 362.)

The case presents a different question from that of *Racine* v. *R. R. Co.*,* decided at this term.

Judgment should be reversed, and a new trial ordered, costs to abide the event.

PUTNAM and HERRICK, JJ., concurred.

Judgment reversed, new trial granted, costs to abide the event.