If the code provisions allowed such an examination as is sought here only in cases where the applicant could disclose the "specific" persons against whom his cause of action is, they would be useless, for in such cases he would need no examination to find out who they are.

The affidavit, however, is deficient in not stating as required by section 872 that the persons expected to be made defendants are of full age, and also in that it is made by the attorney, and does not disclose a sufficient reason why the plaintiff does not make it, or that the facts sought are not within his knowledge.

The motion is granted.

## QUINLIVAN v. BUFFALO, R. & P. RY. CO.

(Supreme Court, Appellate Division, Fourth Department.   May 22, 1900.)

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY—JUDGMENT —REVIEW.
     Where, in an action for injuries, the evidence is clearly such as to make the defendant's negligence and plaintiff's contributory negligence questions for the jury, judgment entered on the jury's verdict will not be disturbed except for errors occurring at the trial.

2. MASTER AND SERVANT—SAFE PLACE TO WORK—MASTER'S DUTY.
     In an action for injuries caused an employé of a railroad company, it is error to charge that the company was required to furnish plaintiff a safe place in which to perform all his duties, since a master's obligation to his servant in this regard is limited to furnishing him a reasonably safe place in which to work.

3. APPEAL—ERRONEOUS INSTRUCTION—PRESUMPTION OF PREJUDICE.
     An erroneous instruction, which was excepted to, is presumed to be prejudicial to the party excepting so as to warrant a reversal of the judgment.

Appeal from trial term.

Action for injuries by Matthew Quinlivan against the Buffalo, Rochester & Pittsburgh Railway Company.   From a judgment in favor of plaintiff, and from an order denying a motion for new trial on the minutes, defendant appeals.   Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Nathaniel Foote, for appellant.
George Raines, for respondent.

McLENNAN, J.   The defendant at all the times in question was engaged in operating a railroad which passed through the village of Leroy, N. Y.   The tracks extend east and west, and consist of two main tracks located immediately north of the passenger and freight depots, and two sidings the regular distance apart, located to the south of the main tracks and depot buildings,—one the Miller siding, so called, being close to the southerly line of defendant's right of way, and was constructed chiefly for the accommodation of a manufacturing establishment owned by Miller & Co.   These works are west of, and about 700 feet from, the passenger depot, about 400 feet from the freight depot, and in plain view.   During the early part of November,

1897, the Miller Company commenced the erection of a shed for the purpose of its manufacturing establishment, which extended onto the defendant's right of way, the east corner being within about two feet of the south rail of the Miller siding, so called, and so close that there was barely room for a box car passing back and forth upon the siding to clear the shed. This structure was completed about the 15th of November, 1897. During its construction, and after it had been completed, the defendant had used the siding for a period of at least 11 days prior to the accident in question for the purpose of delivering cars to and taking cars from the works of Miller & Co. At about 11:45 o'clock in the forenoon of the 26th day of November, 1897, the plaintiff, who was in the employ of the defendant as a brakeman, and had been so employed for a year or more, was engaged, with the rest of his train crew, in taking three cars from the main track and putting them onto the Miller siding, for the purpose of coupling them to four other cars which were standing thereon, in order that all of them might be drawn from the siding, and made up into a train. As the three cars reached the four stationary cars, the plaintiff was on the ground, on the opposite side of the cars from the shed in question, and made the coupling. He then climbed on top of the first stationary car, and let off the brake; then walked along on top of it to the next car to loosen its brake. The next or third car was a gondola car, and in order to reach the brake upon it he was obliged to go down the ladder at the corner of the box car next to it. While thus engaged, his body extending outward towards the shed in question, and while he was looking to the north as he swung his body around to get onto the gondola car, the train being then in motion, he was drawn against the corner of the shed and between it and one of the cars, and thereby sustained the injuries of which he complains. At the point where he descended the ladder there was sufficient room for the purposes of his work, but from that point the shed gradually extended closer to the siding, until at the last corner there was barely room for a car to pass. The evidence tends to show that the situation made by the erection of the shed in question was dangerous; that it had remained in such condition for such length of time prior to the accident that the defendant knew, or, in the exercise of ordinary care and prudence, ought to have known, of it; that the plaintiff did not know of the situation, and that the character of his employment in the yard and his opportunity for observing was such that the exercise of ordinary care and prudence on his part did not require that he should have knowledge of the same. The evidence was clearly such as to make the defendant's negligence and the plaintiff's freedom from contributory negligence questions of fact for the jury. The jury, by its verdict, having determined those questions favorably to the plaintiff, such determination, and the judgment based thereon, should stand, unless error was committed upon the trial prejudicial to the defendant.

In submitting the case to the jury, the learned trial justice in his charge stated, among other things, as follows:

"The master is required to furnish a safe place for his servants, where they are required to perform any duty in the course of their employment. The de-

fendant in this case was required to furnish Quinlivan a safe place in which to perform all the duties required by his employment. * * * The owner of real property is presumed to know the structures going up upon his land, and buildings put upon his land by trespassers; and so as to railroad corporations. Whenever its officers are not able to superintend it the corporation must employ others to inspect, and they must do it in such manner as to see that their tracks are made safe, and that such structures shall not be erected as will injure the lives and limbs of its employés who are called upon to perform duties upon the siding or in the yard. * * * The defendant was required to employ a competent person to inspect its tracks and sidings, and to look after the structures put upon its property, and if that inspector performed his duty the master is not liable. If an inspector is incompetent to perform the duty, the master is liable; and if he is competent, and neglects to perform his duty, the master is still liable. So in this case. If the master employed a person not capable of performing this duty, or if the performance of the duty by the person employed to look after it was negligent, that is the negligence of the master. If the defendant did not make arrangements for some one competent to look after its property, then it is liable."

To each of the propositions so stated the defendant's counsel duly excepted. We think the rule must be regarded as settled that, as between employer and employé, the employer is only required to use ordinary care and prudence to furnish a reasonably safe place for the employé to work, and safe and suitable tools, machinery, and appliances for his use in the performance of his duty. In the case of Harley v. Manufacturing Co., 142 N. Y. 31, 36 N. E. 813, the court says:

"The master does not guaranty the safety of his servants. He is not bound to furnish them an absolutely safe place to work in, but is bound simply to use reasonable care and prudence in providing such place."

In the case of Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021, the justice at the trial charged the jury, in substance, that the master was charged with the duty of furnishing a safe place for his employés to perform their work. In criticising that charge and in defining the master's duty in such case the court says, at page 254, 157 N. Y., and page 1022, 51 N. E.:

"Now, let us see what are the master's duties. He must provide a reasonably safe place in which the servant may prosecute his labors; not a 'safe place,' as the learned court said in charging the jury."

The rule is laid down in Shear. & R. Neg. (5th Ed.) 406 as follows:

"A railroad company is bound to use ordinary care for the purpose of laying its track, roadbed, etc., in such manner and keeping them in such condition, as to make the road safe for all persons having the right to be upon it, and it is bound to use great care in this respect for the protection of its passengers."

The other proposition charged by the court was to the effect that, if the inspector of the defendant was incompetent, that fact established the defendant's negligence; and that, if the inspector was competent, but negligently performed his duty, such negligence was chargeable to the defendant; and, in substance, that the defendant was chargeable with the duty of seeing to it that the siding upon which the plaintiff was injured was an absolutely safe place in which to perform his duties. Under the authorities we think the learned trial justice, in his charge to the jury, failed to correctly define the duty which the defendant owed to the plaintiff under the circum-

stances disclosed by the evidence in this case, and it cannot be said that the charge was not prejudicial to the defendant. The presumption is that an erroneous instruction to a jury, which is duly excepted to, is prejudicial to the party excepting. Without expressing any opinion as to the weight of the evidence bearing upon the questions of defendant's negligence, or the plaintiff's freedom from contributory negligence, or upon any of the other questions raised upon this appeal, we are of the opinion that, for the reasons above indicated, the judgment and order appealed from should be reversed, and a new trial ordered.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.