the proof deprives the award of damages of an essential support, and, in my opinion, requires us to grant a new trial.

Judgment of the municipal court reversed, and new trial ordered; costs to abide the event. All concur; HIRSCHBERG, J., in result.

(67 App. Div. 241.)

## BATEMAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. December 3, 1901.)

1. MASTER AND SERVANT—FELLOW SERVANTS.

Plumbers employed in the regular service of a corporation were fellow servants with a woman employed to clean the offices of such corporation.

2. SAME—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

The cover of a trapdoor in defendant's offices was flush with the floor, when in position, and fitted so tightly that it could only be opened by prying. It contained no hinges, and rested firmly on joists. Plaintiff's fellow servants, having removed the trapdoor, left it raised a little on one side, so that, when plaintiff stepped on it, it tipped up, and thus injured her. *Held* insufficient to show that defendant was negligent in not providing a safe place for plaintiff to work.

Appeal from trial term, Onondaga county.

Action by Margaret Bateman against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

On the 17th day of November, 1898, the plaintiff, who is a married woman, and about 41 years of age, was engaged, in company with another woman, in cleaning the freight office of the defendant in the city of Syracuse. While thus occupied she stepped upon a trapdoor in the floor of the office, and was precipitated to the ground below,—a distance of some three or four feet,—thereby sustaining bodily injuries, to recover for which she brings this action. It seems that this hole in the floor was about 25½ inches in length and 22½ inches in width, and that the cover thereto, which was constructed of the same material as the floor itself, was composed of nine pieces of boards 1⅛ inches in thickness, which were nailed or screwed to a batten on the underside, 9 inches wide, so that when in place the cover rested upon joists, and was even with the surface of the floor. There were no hinges upon the cover, but when placed in position it fitted so closely that, in order to be removed, it had to be pried up. Upon the day in question some plumbers who were in the defendant's employ had occasion to do some work under the office floor, in order to accomplish which they removed the cover to the trap; and, instead of replacing the same in the position in which they found it, they left it raised a little on one side, so that, when the plaintiff stepped upon it, it tipped up, and let a portion of her person down through the hole, with the result already mentioned.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Frank Hiscock, for appellant.
T. E. Hancock, for respondent.

ADAMS, P. J. The plaintiff testified (and in this she was uncontradicted) that she had never seen this trapdoor, and did not know of its existence, until the accident occurred, so that there was little, if any, evidence tending to establish contributory negligence upon her part; and the jury were instructed that, if it could be said that the accident was attributable solely to the carelessness of the plumbers in omitting to properly adjust the cover to the opening, the plaintiff

must fail in her action, inasmuch as the negligent parties in that event occupied the relation of coemployés to the plaintiff. This instruction, we think, was manifestly a correct statement of the law of the case; for it seems that the mechanics who it is claimed left the cover in an unsafe condition, although called "plumbers," were in the regular service of the defendant, and not, as might naturally be inferred, the servants of another master, called in to perform work of an independent nature.

The jury were further instructed that they might determine whether or not the place in which the plaintiff was required to perform the service rendered by her was, under all the circumstances of the case a reasonably safe one, and that, if they found it was not, they were at liberty to return a verdict for the plaintiff, even though her injuries were the result of the combined negligence of the defendant and its plumber employés. This, it is hardly necessary to suggest, is also a correct statement of the law, provided the case furnishes any evidence which will fairly support a verdict based upon the assumption that the defendant failed to perform the duty which the law requires of every master, which is, not to furnish his servants with the best and safest place and appliances in and with which to perform the services required of them, but simply to exercise a proper degree of care in order that they may be reasonably safeguarded in these respects. Dumes v. Sizer, 3 App. Div. 11, 37 N. Y. Supp. 929. In this particular case the only omission of duty charged against the defendant was its failure to secure the trap cover to the floor by means of hinges, and it was left to the jury to say whether such omission constituted negligence, within the rule of law applicable to cases of this description. In stating this rule, the court of appeals has said, in a very recent case, that:

"It has not been understood to be the rule in this state that in the performance of work of this character the master, after making his place in the first instance reasonably safe for the prosecution of the work, has any duty to perform, other than in the furnishing of safe appliances and the employment of competent and skillful employés. Under the guise of an application of the rule requiring a master to furnish a reasonably safe place for his servants to work in, other attempts before this have been made to deprive a defendant of the benefit of another equally well-settled and just rule of the law of negligence,—that a party shall not be held responsible to a servant for an injury occasioned by the neglect of a competent coemployé." Perry v. Rogers, 157 N. Y. 251–255, 51 N. E. 1023.

And this is not the declaration of any new principle, but simply the statement of one which has been frequently enunciated by the same tribunal under differing conditions of fact. Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. Rep. 787; Filbert v. Canal Co., 121 N. Y. 207, 23 N. E. 1104; Hogan v. Smith, 125 N. Y. 774, 26 N. E. 742; Geoghegan v. Steamship Co., 146 N. Y. 369, 40 N. E. 507. Tested by the rule as thus declared, we fail to see how it can be said that the place in which the plaintiff was required to perform her work was unsafe, in any sense for which the defendant was responsible. The cover for the trap was, beyond all question, so constructed as to withstand the greatest weight which under any conceivable circumstances would ever rest upon it; and,

when adjusted in the manner designed by the defendant it was not only flush with the floor, but it was a part of the floor, and just as firm and safe as any other part. Indeed, it appears that in such circumstances it was so firmly and closely fitted to the aperture for which it was constructed that it required some effort to remove it; and, this being so, the conclusion is irresistible that, but for the failure of the plumbers to replace the cover in the exact condition in which they found it, the plaintiff would have escaped the injury which subsequently resulted. It is possible that, if the cover had been adjusted by means of hinges, this particular accident would not have occurred; but, even assuming this to be so, it does not follow that the defendant's liability is established, for the fact still remains that with the means of adjustment which it had furnished, and which, so far as appears, had always theretofore proved sufficient, the place was both safe and suitable, within the rule cited, and, if so, the verdict of the jury has nothing upon which to rest. Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56; D'Arcy v. Railroad Co., 34 App. Div. 275, 54 N. Y. Supp. 553. These views necessarily lead to a reversal of the judgment and order appealed from.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event. All concur.